UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ERICA GONZALEZ GHEESLING,

        Plaintiff,

v.                              CASE No.  8:04-CV-333-T-TGW

DAVID GEE, etc., et al.,

        Defendants.
_____


O R D E R


        The defendants, the Hillsborough County Sheriff and a deputy sheriff, have moved for summary judgment on the plaintiff's federal and state claims of false arrest.  Summary judgment is warranted on the federal claim against the deputy because she had probable cause to make the arrest. However, since the state law claim raises state law issues that are appropriately resolved by the state courts, that claim will be remanded to state court.


I.


        On the afternoon of January 27, 2000, Hillsborough County deputy sheriff Theresa Osgood was on patrol duty in the area of University

Mall in Tampa, Florida (Osgood Dep., p. 4).  At the sheriff's sub-station at the mall, Osgood was told by Diana Carman and her thirteen-year-old daughter Rachel that Rachel's purse had been stolen at the mall's food court earlier that afternoon (id. at p. 5).  The Carmans said they saw the person who took the purse and followed her to mall stores, including the Finish Line, where an employment application was left.  The Carmans described the person who took the purse.  They also described the purse as being from Old Navy, blue with silver straps, a flap-over cover, and a particular stained marking on the outside (Doc. 11, Ex. A, p. 2, ¶7).

Osgood proceeded to the Finish Line, where the manager stated that a person matching a description given by the Carmans had submitted an employment application that afternoon in the name of Erica Gonzalez (id. at ¶¶ 8, 9).  The manager agreed to call Gonzalez and request her to come to the store, purportedly for an interview.  Consequently, Gonzalez went to the store, where she was observed by Osgood.  Osgood stated that Gonzalez matched the description given by the Carmans (id. at p. 3, ¶12).  Moreover, Gonzalez was carrying a purse that matched the description given by the Carmans, including the stain (Osgood Dep., pp. 7, 21).

After Gonzalez acknowledged that she had been in the food court that afternoon, Osgood told Gonzalez to come with her to the sub-station (Gonzalez Dep., pp. 18, 19). Osgood then called the Carmans, who returned to the mall in about forty-five minutes to an hour and a half (id. at p. 26; Osgood Dep., p. 9). The Carmans identified Gonzalez as the person who took the purse (Doc. 11, Ex. A, p. 3, ¶16). They also identified the purse Gonzalez had been carrying as the one taken from Rachel (id.).

Osgood directed Gonzalez to give Rachel the purse, which was devoid of any of the girl's possessions (Osgood Dep., pp. 7, 18). Osgood then placed Gonzalez in a lock-up at the sub-station (Gonzalez Dep., p. 36). Osgood discussed the matter with the Carmans, who said they did not want to prosecute and just wanted the purse (Doc. 11, Ex. A, p. 3, ¶17). Accordingly, the Carmans signed a waiver of prosecution (id. at Ex. B, p. 5). Gonzalez was subsequently released.

After a false start (the plaintiff, through different counsel, mistakenly sued the mall security company), the plaintiff filed this suit in Hillsborough County Circuit Court, alleging in count one that the Hillsborough County Sheriff was guilty of false arrest and false imprisonment under state law, and in count two that Osgood was liable under 42 U.S.C.

1983 for an unconstitutional seizure.[1]  As a result of count two, the defendants removed the action to this court (Doc. 1).  The parties subsequently consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 6).  The defendants have filed a motion for summary judgment, and argument has been heard on that motion.

II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.Civ.P. 56(c).  Material facts are those over which disputes "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The movant bears the burden of establishing the absence of a dispute over material facts.  Reynolds v. Bridgestone/ Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

---

[1]The plaintiff has apparently married in the interim and her name is now Erica Gonzalez Gheesling.  The current Sheriff, and therefore the proper defendant, is David Gee.

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

When the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v.

-5-

Bridgestone/Firestone, Inc., supra, 989 F.2d at 469.  Any reasonable doubts about the facts are to be resolved  in favor of the party opposing  the motion for summary judgment.  Id.

III.

A.  It is appropriate to start with the §1983 claim in count two since that is the basis for this court's jurisdiction.   As amplified in the plaintiff's responsive memorandum, she contends that Osgood violated her Fourth Amendment rights.  Osgood argues that there was no such violation, and that, in all events, she is entitled to qualified immunity.  The law in this area is fairly well settled, and, accordingly, the parties do not substantially disagree about the law.

Where, as here, a claim of qualified immunity is raised, there is a two-part inquiry.  Thus, the issues are whether a constitutional right has been  violated, and, if so, whether the law clearly established that the officer's conduct was unlawful in the circumstance of the case.  Saucier v. Katz, 533 U.S. 194, 200-201 (2001).

At the hearing, the defendants suggested that there was no constitutional violation because Gonzalez consented to accompany Osgood to the sub-station.  This contention is based upon the statement by Gonzalez in a deposition that "I wanted to go get everything cleared up, so I was just

going to go with them" (Gonzalez Dep., p. 19). This statement, at least on the defendants' motion for summary judgment, will not bear the weight assigned to it. Importantly, Osgood testified that, after the encounter at the Finish Line, the plaintiff was detained and Osgood took the plaintiff back to the office (Osgood Dep., p. 9). Osgood added that the plaintiff was not free to leave (id. at p. 18). In light of Osgood's testimony, I am not prepared to find, when all reasonable inferences are drawn in the plaintiff's favor, that the plaintiff consented to go with Osgood to the sub-station.

At the hearing, plaintiff's counsel agreed that, from the time Osgood directed the plaintiff to the sub-station until the Carmans identified the plaintiff and the purse, the plaintiff had not been arrested, and was merely temporarily detained during an investigatory stop. Under this scenario, the defendants would only have to show that Osgood had reasonable suspicion for the detention, and, on the claim of qualified immunity, that Osgood had arguable reasonable suspicion. Jackson v. Sauls, 206 F.3d 1156, 1165-66 (11th Cir. 2000). The defendants' showing unquestionably exceeds this low standard.

Indeed, even disregarding the plaintiff's concession of temporary detention and assuming that the plaintiff had been arrested at the Finish Line, I find that there was no Fourth Amendment violation because

Osgood had probable cause at that time to arrest the plaintiff.  At that point, the plaintiff acknowledged to Osgood being at the food court that afternoon.[2]  Further, the plaintiff matched the description of the thief given by the Carmans.  Moreover, the purse Gonzalez was carrying matched the description that the Carmans had given.  In this respect, Osgood testified that "there was even a stain on the purse that this girl described, right down to the stain.  I mean, it was exact that she described it" (Osgood Dep., p. 7).

As both parties recognize, "[a] law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  See, e.g., Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995).  That standard was met here.  Thus, as indicated, Gonzalez acknowledged being at the food court, and she and the purse matched the description given by the Carmans.  Moreover, Osgood had no

---

[2]The plaintiff said that later she recalled that she was not at the food court that day, but was there a couple of days earlier when she picked up job applications (Gonzalez Dep., p. 18).  This assertion, if made to Osgood, would not militate against a finding of probable cause.  To the contrary, a statement that the plaintiff did not recall that she was last in the food court a couple of days before, rather than a couple of hours earlier, is so implausible that it would give strong reason to think that Gonzalez was lying.

reason to think that the Carmans, who had reported the theft to her in a face-to-face meeting, were acting in bad faith or were otherwise filing a false police report.

The presence of probable cause at the time of the initial encounter defeats the plaintiff's §1983 claim for false arrest since there was no constitutional violation.  A fortiori, the §1983 claim would be foreclosed by Osgood's assertion of qualified immunity since plainly Osgood had arguable probable cause for the arrest.  See VonStein v. Brescher, 904 F.2d 572, 578-80 (11th Cir. 1990).[3]

It is almost unnecessary to add that, when the Carmans returned to the sub-station and identified both Gonzalez and the purse, there obviously was probable cause for an arrest.  The plaintiff asserts, however, that, before arresting her, Osgood should have undertaken more investigatory measures, such as reviewing the mall's surveillance tapes, or calling the plaintiff's parents or roommates.  Rankin v. Evans, 133 F.3d 1425, 1435-36 (11th Cir. 1998), cert. denied, 525 U.S. 823 (1998), the case cited by the plaintiff on this point, indicates simply that an arresting officer must conduct a reasonable investigation and does not require the officer to explore all

---

[3]It is noted that an arrest is the type of discretionary conduct that is covered by the doctrine of qualified immunity.  Id.

avenues of potential exculpatory information.  Here, Osgood summoned the Carmans back to the mall and, upon their identification of the plaintiff and the purse, reasonably concluded that that was sufficient investigation to establish probable cause for the petit larceny.

Furthermore, the plaintiff's suggestion that, if Osgood had taken the additional investigatory steps, exculpatory evidence would have turned up is completely unsubstantiated and speculative.  Thus, the plaintiff has not adduced exculpatory evidence from the mall surveillance tapes, from her parents, from her roommates, or from any other source.  Under these circumstances, the assertion that Osgood failed to conduct a reasonable investigation is meritless.

In the last paragraph of her response, the plaintiff argues that Osgood was not authorized to arrest her without a warrant for a misdemeanor that was not committed in Osgood's presence.  <u>See</u> §901.15(1), <u>Fla. Stat.</u>  That argument, however, does not save the plaintiff's §1983 claim.  In rejecting this very argument, the Eleventh Circuit has stated that, "[w]hile the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983."  <u>Knight</u> v. <u>Jacobson</u>, 300 F.3d 1272, 1275-76 (11th Cir. 2002).

For these reasons, Osgood is entitled to summary judgment dismissing count two.   Accordingly, Osgood will be dismissed as a defendant since that is the only count in which she is named.

B.  The dismissal of the federal claim, which was the only basis for this court's original jurisdiction, raises the question whether the state law claim in count one should be retained here, or remanded to state court. This court had supplemental jurisdiction of count one pursuant to 28 U.S.C. 1367(a).    Under §1367(c)(3), the court may decline supplemental jurisdiction where, as here, "the district court has dismissed all claims over which it has original jurisdiction."

The Eleventh Circuit has stated that among the factors a district court should consider in exercising its discretion whether to decline supplemental jurisdiction are judicial economy, convenience, fairness, and comity.  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).  The court explained that "[b]oth comity and economy are served when issues of state law are resolved by state courts." Id.  It added that "[t]he argument for dismissing the state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial." Id.

The presence of state law issues raised by the plaintiff's argument under §901.15(1), <u>Fla. Stat.</u>, warrants remand to permit consideration of those issues by the state courts. Notably, the issues have not yet been developed here and, thus, there is no concern for wasted effort if they are remanded to state court. Moreover, the issues, if not novel (<u>see</u> 28 U.S.C. 1367(c)(1)), are at least unsettled, so that their resolution is appropriately left for the state courts.

In the first place, the Eleventh Circuit in <u>Knight</u> v. <u>Jacobson</u>, <u>supra</u>, 300 F.3d at 1276, said that a violation of §901.15(1) "may (or may not) give rise to a state tort claim." Whether it does is a question properly answered by the state courts.

In addition, there is a question of whether the plaintiff's return to the mall with a reportedly stolen purse amounts to a misdemeanor committed in Osgood's presence. The interpretation of state criminal law on that question should be made by the state courts. And frankly, if Florida law is so nonsensical that a police officer with probable cause cannot arrest a suspect standing before her with property recently stolen in a petit theft in a non-retail setting, I would want the state courts, rather than me, to announce that determination and to attempt to explain it to the general public.

A third potential issue for resolution is the effect, if any, of the Florida Stop and Frisk Law on §901.15, <u>Fla.</u> <u>Stat.</u>  The Stop and Frisk Law permits an officer to detain a person temporarily upon reasonable suspicion that the person committed a violation of any state law or county or municipal criminal ordinance.   §901.151(2), <u>Fla.</u> <u>Stat.</u>   There is no limitation to misdemeanors committed in the officer's presence.  Further, if probable cause appears, "the person shall be arrested." §901.151(4), <u>Fla.</u> <u>Stat.</u>   Again, there is no limitation to misdemeanors committed in the officer's presence.  Arguably, therefore, §901.151 differs pertinently from §901.15, and that, under the circumstances of this case, §901.151 is the applicable provision.[4]

If §901.151 is the governing standard, that section would raise additional state law questions.  Thus, since temporary detention is not to extend beyond the immediate vicinity of the place where it was first effected, §901.151(3), <u>Fla.</u> <u>Stat.</u>, questions would be raised whether the sub-station was in the "immediate vicinity" of the Finish Line, or whether the plaintiff consented to have the inquiry conducted at the sub-station rather than the Finish Line.

---

[4]It is noted that there is no literal inconsistency between §901.15 and §901.151. Section 901.15 simply authorizes arrest without a warrant in certain circumstances and contains no express prohibition against arrests in circumstances not mentioned.

While not all of these potential state law questions will necessarily need to be resolved in reaching a decision on count one, at least some of them will. Clearly, the state courts will have greater knowledge, experience and background of state law, which will assist the resolution of the state law issues. Since this action was originally filed in state court, the proper course following the disposition of the federal claim is to remand the state law claim to state court. <u>See</u> <u>Cook ex rel. Estate of Tessier</u> v. <u>Sheriff of Monroe Co., Fla.</u>, 402 F.3d 1092, 1123 (11th Cir. 2005).

It is, therefore, upon consideration

ORDERED:

1. That Defendants' Dispositive Motion for Summary Judgment Pursuant to Rule 56, Fed.R.Civ.P. (Doc. 11) is hereby GRANTED to the extent that count two is DISMISSED, and defendant Theresa Osgood is thereby DISMISSED as a party. Accordingly, the Clerk is directed to enter judgment on count two in favor of defendant Theresa Osgood and against the plaintiff, dismissing count two and Theresa Osgood as a defendant.

2. That the Clerk is further directed to REMAND count one to Hillsborough County Circuit Court. Thereupon, the Clerk shall close this case.

DONE and ORDERED at Tampa, Florida, this  29th  day of

April, 2005.


THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE